# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DENISE DIXON,** | : | **No. 3:17-CV-1827** |
| Plaintiff | : | |
| | : | **Judge Mariani** |
| v. | : | **Magistrate Judge Schwab** |
| | : | |
| **PENNSYLVANIA DEPARTMENT OF** | : | |
| **CORRECTIONS, JOHN E. WETZEL,** | : | **Electronically Filed Document** |
| **ROBERT SMITH, W FRANTZ, WENDY** | : | |
| **NICHOLAS, GARY LOWE, MR.** | : | *Complaint Filed 10/05/17* |
| **MINNIG, MR. SCHAEFFER, ITW FOOD** | : | |
| **EQUIPMENT GROUP, LLC, MS.** | : | |
| **ANTHONY, TAMMY RISHEL, MS.** | : | |
| **YOUNG, LESLIE BLAIR-MORRISON,** | : | |
| **CYNTHIA FREELAND, CORRECT** | : | |
| **CARE SOLUTIONS, LLC,** *and* | : | |
| **CHRISTOPHER OPPMAN** | : | |
| Defendants | : | |

## DECLARATION OF DORINA VARNER

I, **Dorina Varner**, hereby declare under penalty of perjury in accordance with 28 U.S.C. §1746 that the following facts are true and correct based upon my personal knowledge or from my review of records routinely maintained during the operation of the Pennsylvania Department of Corrections (Department):

1.    I am employed as the Chief Grievance Officer with the Pennsylvania Department of Corrections' Secretary's Office of Inmate Grievances and Appeals (SOIGA).   I have been employed in this position since October 2008.   I have been employed by the Department in other capacities since 1990.

2.  In my position as Chief Grievance Officer, I receive and process inmate grievance appeals, pursuant to Department Policy DC-ADM 804 entitled "Inmate Grievance System."

3.  My responsibilities as Chief Grievance Officer require me to track, review, address, and maintain an accurate file of the documentation for final appeals of inmate grievances.

4.  It is my practice to keep a complete record of all appeals of grievances submitted to the SOIGA, along with a complete record of all the documentation that is submitted with the appeals, whether they are addressed on the merits or rejected for procedural deficiencies.

5.  The Department has established a formal policy and a procedures manual which must be followed by inmates who file grievances while incarcerated at State Correctional Institutions operated by the Department. The purpose of a grievance is to allow an inmate to bring concerns and complaints to the attention of prison officials.

6.  All inmates, regardless of where they are housed in an institution, may file grievances.

7.  An outline of the grievance system policy and procedures manual is provided to all inmates in their inmate handbook when coming into one of the Department's diagnostic and classification centers and are provided notice of any

revisions to the policy and procedures manual. In addition, when an inmate is assigned to a permanent institution, a copy of the grievance system policy and procedures manual is available in the institutional library for inmates to review or request to obtain copies.

8.      The grievance procedures are set forth in the Department's Administrative Directive 804 (DC-ADM 804), titled *Inmate Grievance System*.

9.      The version of DC-ADM 804, which became effective on May 1, 2015, and attached hereto as ***Varner Attachment 1*** is a true and correct copy of the version of the policy and procedures manual that has been in effect since May 1, 2015.

10.     Pursuant to DC-ADM 804, the Department has a three-tiered grievance system which serves as an inmate's administrative remedy:  (1) an initial review by a Grievance Coordinator; (2) appeal to the Facility Manager or designee; and (3) appeal to the SOIGA for final review.

11.     DC-ADM 804 ensures that "every individual committed to [DOC's] custody [has] access to a formal procedure through which to seek resolution of problems or other issues of concern arising during the course of confinement." *Varner Attachment 1, DIXON.DOC003094.*

12.     Pursuant to DC-ADM 804, any inmate personally affected by a Department or Institutional action or policy, or by the action of a Department employee may file a grievance.

13.    The grievance must be submitted in writing to the Facility Grievance Coordinator, using the grievance form which is available on all housing units or blocks. It must be submitted within 15 working days after the event upon which the grievance is based. *See Varner Attachment 1, DIXON.DOC003097-DIXON.DOC003098.*

14.    The grievance must include the following:  a statement of the facts relevant to the claim including the date and approximate time and location of the event(s) giving rise to the grievance; the identity of any individuals who were directly involved in the event(s); any claims the inmate wishes to make concerning violations of DOC directives, regulations, court orders, or other law; and any compensation or legal relief desired. *See Varner Attachment 1, DIXON.DOC003098.*

15.    Upon receipt, the Facility Grievance Coordinator assigns each grievance a tracking number (even a rejected grievance) and enters it into the Automated Inmate Grievance Tracking System. *See Varner Attachment 1, DIXON.DOC003102.*

16.    The Facility Grievance Coordinator will refer a properly submitted grievance to a staff member to make a written response to the grievant. All responses are submitted to the Facility Grievance Coordinator prior to distribution to the inmate. *See Varner Attachment 1, DIXON.DOC003102-DIXON.DOC003103.*

17.   If the inmate is dissatisfied with the initial response, he may appeal that decision to the Facility Manager (superintendent). *See Varner Attachment 1, DIXON.DOC003108.*

18.   The Facility Manager provides a written response to the grievant. The Facility Manager may uphold the response, uphold the inmate, dismiss/dismiss untimely, or uphold in part/deny in part. Additionally, the Facility Manager may remand the Initial Review Response to the Grievance Officer for further investigation and/or consideration. *See Varner Attachment 1, DIXON.DOC003109-DIXON.DOC003111.*

19.   Any grievant who is not satisfied with the decision of the Facility Manager may submit an appeal to the Secretary's Office of Inmate Grievances and Appeals. Only issues raised in both the original grievance and the appeal to the Facility Manager may be appealed at this level. *See Varner Attachment 1, DIXON.DOC.003111-DIXON.DOC003114.*

20.   The Secretary's Office of Inmate Grievances and Appeals reviews the original grievance and the Initial Review Response, the appeal to the Facility Manager and the response, along with the appeal to final review and any exhibits the inmate may have submitted. *See Varner Attachment 1, DIXON.DOC003114.*

21.   The Secretary's Office of Inmate Grievances and Appeals issues a decision which may uphold the response, uphold the inmate, dismiss, or uphold in

part/deny in part. Alternatively, the Chief Grievance Officer may remand the grievance to the facility for further investigation/reconsideration and/or may refer an appeal to a different bureau. *See Varner Attachment 1, DIXON.DOC003114-DIXON.DOC003115.*

22.    At the request of counsel for the Defendants in *Denise Dixon v. Pennsylvania Department of Corrections, et al.* No. 3:17-cv-1827 (M.D. Pa.), I have reviewed the Automated Inmate Grievance Tracking System database and our files for all grievances submitted for final review by Inmate Denise Dixon (OT5426) while incarcerated at SCI Muncy. A true and correct copy of Ms. Dixon's grievance tracking history is attached hereto as ***Varner Attachment 2.***

23.    Ms. Dixon did not file any grievances in October 2015.

24.    The first grievance filed by Ms. Dixon was Grievance No. 605287, received on January 6, 2016.

25.    Ms. Dixon never filed a grievance complaining that she was required to work in unsafe or dangerous conditions in SCI Muncy's Central Kitchen.

26.    Ms. Dixon never filed a grievance complaining that the dishwasher in SCI Muncy's Central Kitchen was broken or in need of repair.

27.    Ms. Dixon never filed a grievance against the Commonwealth Defendants named in this action. This includes the following individuals: Heather Anthony, Leslie Blair-Morrison, William Frantz, Gary Lowe, Michael Minnig,

Wendy Nicholas, Christopher Oppman, Jason Shaffer, Robert Smith, John Wetzel, and Nicole Young.

Date: _7/10/19_                              _Dorina Varner_
                                            **Dorina Varner**

# EXHIBIT A

## ATTACHMENT 1



| POLICY STATEMENT |
| Commonwealth of Pennsylvania • Department of Corrections |

| Policy Subject: | Policy Number: |
| --- | --- |
| **Inmate Grievance System** | **DC-ADM 804** |

| Date of Issue: | Authority: | Effective Date: |
| --- | --- | --- |
| **April 27, 2015** | **Signature on File** | **May 1, 2015** |
| | **John E. Wetzel** | |

## I.    AUTHORITY

The Authority of the Secretary of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, 71 P.S. §§61, 66, 186, and 310-1, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II.    APPLICABILITY

This policy is applicable to all facilities operated under the jurisdiction of, or conducting business with the Department of Corrections, Department employees, volunteers, contract personnel, visitors and inmates.

## III.    POLICY

It is the policy of the Department that every individual committed to its custody shall have access to a formal procedure through which to seek resolution of problems or other issues of concern arising during the course of confinement. For every such issue, there shall be a forum for review and two avenues of appeal. The formal procedure shall be known as the Inmate Grievance System.[1]

---

[1] 4-4281, 4-4284, 4-4394, 4-ACRS-6B-03

DIXON.DOC003094

## IV.  PROCEDURES

All applicable procedures are contained in the procedures manual that accompanies this policy document.

## V.  SUSPENSION DURING AN EMERGENCY

In an emergency or extended disruption of normal facility operation, the Secretary/designee may suspend any provision or section of this policy for a specific period.

## VI.  RIGHTS UNDER THIS POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual.  This policy should be interpreted to have sufficient flexibility to be consistent with law and to permit the accomplishment of the purpose(s) of the policies of the Department of Corrections.

## VII.  RELEASE OF INFORMATION AND DISSEMINATION OF POLICY

### A.  Release of Information

1.  Policy

    This policy document is public information and may be released upon request.

2.  Confidential Procedures (if applicable)

    Confidential procedures for this document, if any, are not public information and may not be released in its entirety or in part, without the approval of the Secretary of Corrections/designee. Confidential procedures may be released to any Department of Corrections employee on an as needed basis.

### B.  Distribution of Policy

1.  General Distribution

    The Department of Corrections' policy and procedures shall be distributed to the members of the Central Office Executive Staff, all Facility Managers, and Community Corrections Regional Directors on a routine basis.  Distribution of confidential procedures to other individuals and/or agencies is subject to the approval of the Secretary of Corrections/designee.

2.  Distribution to Staff

    It is the responsibility of those individuals receiving policies and procedures, as indicated in the "General Distribution" section above, to ensure that each employee

2

DIXON.DOC003095

expected or required to perform the necessary procedures/duties is issued a copy of the policy and procedures either in hard copy or via email, whichever is most appropriate.

## VIII. SUPERSEDED POLICY AND CROSS REFERENCE

### A. Superseded Policy

1. Department Policy

   DC-ADM 804, Inmate Grievance System, issued March 31, 2014, by Secretary John E. Wetzel.

2. Facility Policy and Procedures

   This document supersedes all facility policy and procedures on this subject.

### B. Cross Reference(s)

1. Administrative Manuals

   a. DC-ADM 001, Inmate Abuse Allegation Monitoring;

   b. DC-ADM 006, Reasonable Accommodations for Inmates with Disabilities;

   c. DC-ADM 008, Prison Rape Elimination Act (PREA);

   d. DC-ADM 801, Inmate Discipline;

   e. DC-ADM 802, Administrative Custody procedures;

   f. 3.1.1, Fiscal Administration; and

   g. 6.3.1, Facility Security;

2. ACA Standards

   a. Adult Correctional Institutions: 4-4016, 4-4281, 4-4284, 4-4301, 4-4394, 4-4429

   b. Adult Community Residential Services: 4-ACRS-6B-01, 4-ACRS-6B-03, 4-ACRS-7D-36

   c. Correctional Training Academies: None

DIXON.DOC003096

## Section 1 – Grievances & Initial Review

## A. Filing of an Initial Grievance

1. The Department encourages an inmate to express his/her concerns to staff through respectful, constructive, written, or oral communication so that problems are resolved as soon as possible.[1]

2. The Inmate Grievance System is intended to deal with a wide range of issues, procedures, or events that may be of concern to an inmate. It is not meant to address incidents of an urgent or emergency nature including allegations of sexual abuse. Any allegation of a sexual nature (abuse/harassment) against a staff member or inmate-on-inmate sexual *abuse must* be addressed through Department policy **DC-ADM 008, "Prison Rape Elimination Act (PREA)."** When faced with an incident of an urgent or emergency nature, the inmate shall contact the nearest staff member for immediate assistance.

3. An inmate is encouraged to attempt resolution of a concern informally by use of a **DC-135A, Inmate Request to Staff Member** or direct conversation with the Unit Manager or Officer-in-Charge prior to submitting a **DC-804, Part 1, Official Inmate Grievance Form (Attachment 1-A)**. This is not required in cases of allegations of *physical or sexual abuse*.

   a. A staff member who receives an oral or written concern from an inmate is expected to attempt to resolve the concern if possible.

   b. It is encouraged, when possible, to resolve every concern quickly and informally.

   c. If the staff member is not the appropriate person to resolve the concern raised by the inmate, he/she should be referred to the appropriate staff member.

   d. The Unit Manager or Officer-in-Charge shall document the result of the resolution, including each party involved, in the Inmate Cumulative Adjustment Record (ICAR).

4. While an inmate should make every effort to resolve a concern informally prior to filing an official grievance, failure to attempt to informally resolve a concern will not be cause to reject an official grievance. However, if an attempt was made to resolve the concern informally, this information should be included in **Section B** of the **DC-804, Part 1**.

5. When an inmate has a concern that he/she is unable to resolve, the inmate must submit his/her grievance to the Facility Grievance Coordinator/designee using the **DC-804, Part 1**.

   a. **DC-804, Part 1** forms shall be readily available on every housing unit as well as in the main and mini-law libraries.

---

[1] 4-4016

Issued: 1/26/2016
Effective: 2/16/2016

DIXON.DOC003097

b. Each copy of the **DC-804, Part 1** form, with the exception of the inmate's copy (GOLDENROD), shall be forwarded to the Facility Grievance Coordinator/designee who will determine whether the grievance will be accepted or rejected.

6. A grievance regarding an allegation of a sexual nature (abuse/harassment) against a staff member or inmate-on-inmate sexual ***abuse*** will not be addressed through the Inmate Grievance System and must be addressed through Department policy **DC-ADM 008,** *in accordance with Subsection C.4.b. below*. These allegations are taken seriously by the Department and must and will be investigated to make sure that inmates are safe in the facilities. If a grievance is filed ***against a staff member*** regarding an allegation of a sexual nature (abuse/harassment) or inmate-on-inmate sexual ***abuse***, the grievance will be immediately forwarded to the Security Department as well as the PREA Compliance Manager in accordance with Department policy **DC-ADM 008** to start an investigation ***and will not be addressed through the Inmate Grievance System***.

7. Issues concerning a specific inmate misconduct charge, ***conduct of hearing, statements written within a misconduct and/or other report,*** a specific disciplinary sanction, and/or the reasons for placement in administrative custody will not be addressed through the Inmate Grievance System and must be addressed through Department policy **DC-ADM 801, "Inmate Discipline"** and/or **DC-ADM 802, "Administrative Custody Procedures."** ***Issues other than specified above must be addressed through the Inmate Grievance System.***

8. The inmate must submit a grievance to the Facility Grievance Coordinator/designee, usually the Superintendent's Assistant, within 15 working days after the event upon which the claim is based.

9. A grievance must be filed with the Facility Grievance Coordinator/designee at the facility where the grievance event occurred.

10. The inmate must sign and date the grievance with his/her commitment name and number only, without reference to the UCC, aliases, etc.

11. The text of the grievance must be legible, understandable, and presented in a courteous manner. The inmate must include a statement of the facts relevant to the claim.

a. The statement of facts shall include the date, approximate time, and location of the event(s) that gave rise to the grievance.

b. The inmate shall identify individuals directly involved in the event(s).

c. The inmate shall specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law.

d. If the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance.

Issued: 1/26/2016
Effective: 2/16/2016

DIXON.DOC003098

12. The statement of facts must not exceed two pages and must be handwritten or typed on writing paper (one **DC-804, Part 1** and one one-sided 8 ½" x 11" page).

13. An inmate who has been personally affected by a Department and/or facility action or policy will be permitted to submit a grievance.

14. Any grievance based on separate events must be presented separately, unless it is necessary to combine the issues to support the claim.

15. Any grievance issue that has been or is currently being addressed will not be re-addressed in a subsequent grievance. Any concern disputing previous grievances, *initial review responses*, appeal decisions, or *actions of* staff members who rendered those decisions should be addressed through the appeal process outlined in **Section 2** of this procedures manual.

16. Each grievance must be presented individually. A grievance submitted by one inmate for another inmate or a group of inmates is prohibited and will not be processed.

17. An inmate filing a grievance related to a claim of missing property must provide documentation such as a **DC-153A, Personal Property Inventory Sheet**; **DC-154A, Confiscated Items Receipt**; or a *Commissary/*Outside Purchase Form for evidence or proof that the property items were once in his/her possession. Failure to do so may result in the rejection of the grievance.

18. *A grievance related to a publication/photograph denial must include a copy of the Notice of Incoming Publication Form in accordance with Department policy DC-ADM 803, "Inmate Mail and Incoming Publications."*

19. An inmate filing a grievance contesting the accuracy of the **Notification of Deductions Memo** and/or the **Notification of Amended Deductions Memo** of Department policy **DC-ADM 005, "Collection of Inmate Debts**," must provide valid, official court documentation proving that:

    a. the financial obligations have previously been paid;

    b. the information submitted on the official court documents by the Clerk of Courts was incorrect;

    c. for a sentencing occurring prior to December 26, 2010, the sentencing judge did not impose court costs;

    d. for a sentencing occurring on or after December 26, 2010, the sentencing judge specifically waived court costs;

    e. in the case of an obligation for restitution, reparation, fines, or penalties, the sentencing court did not specifically order you to pay such obligation regardless of the date of sentence;

Issued: 1/26/2016
Effective: 2/16/2016

DIXON.DOC003099

f.  a more recent court order removed or postponed the financial obligations;

g.  the financial obligations are not currently due under the terms of the court order;

h.  the Crime Victim Compensation/Victim's Services Fee was not computed in accordance with law;

i.  the court costs are related to an adjudication of delinquency, and you have attained the age of 21. If you are not yet 21, and are paying these fees, you should notify the Business Office on your 21st birthday; or

j.  you do not owe the financial obligations for any other reason.

   **NOTE**: Failure to provide any of the above with your grievance may result in rejection of your grievance.

20. If a grievance is rejected, the grievance may be re-submitted, using the same grievance number, within five working days of the rejection notice date. A rejected grievance may only be re-submitted one time.

21. ***An inmate may appeal the rejected grievance to the Facility Manager in accordance with Section 2 of this procedures manual.***

22. In a case involving personal property, the inmate must clearly notify the Facility Manager or Facility Grievance Coordinator/designee to retain the property pending completion of the grievance process, including any appeal. This notification can be made within the initial grievance.

23. ***For cases regarding confiscated contraband, destruction of the property shall only occur after the appeal process has been exhausted.***

24. No inmate shall be punished, retaliated against, or otherwise harmed for use of the grievance system.[2]

25. At any point in the grievance process, the inmate may withdraw the grievance.

   a.  To withdraw a grievance, an inmate must use and sign the **Grievance Withdrawal Form (Attachment 1-B)**, identify the grievance to be withdrawn by number, the reason why the grievance was withdrawn, and forward the form to the Facility Grievance Coordinator/designee.

   b.  The Facility Grievance Coordinator/designee will forward a copy of the **Grievance Withdrawal Form** to the inmate's counselor.

---

[2] 4-4281

Issued: 1/26/2016
Effective: 2/16/2016

DIXON.DOC003100

   c. The inmate's counselor will meet with the inmate to verify that the grievance was resolved and that the withdrawal was appropriate.

   d. The counselor will sign the **Grievance Withdrawal Form** and forward it to the Facility Grievance Coordinator/designee.

   e. Once a grievance is withdrawn, the inmate cannot then proceed to appeal to either the Facility Manager or Final Review.

26. Any document(s) attached in support of a grievance becomes part of the official record and will not be returned. The inmate should make copies of the supporting documents prior to submitting to the Facility Grievance Coordinator/designee for use in any subsequent appeals. If copies are needed, the procedures outlined in Department policy **DC-ADM 003, "Release of Information" *must*** be followed.

27. A grievance cannot be filed after parole or release from incarceration.

28. An inmate transferred to a county facility or other state must use the grievance system at that facility regarding any issue that arises at that facility.

## B. Where to Place a Grievance

1. Each Facility Manager/designee shall ensure that a fixed lock-box designated for inmate grievances is on each general population housing unit, ***all Level 5 Housing Units, Specialized Housing Units, and Inmate Dining Halls***.

2. ***Each lock-box shall be clearly labeled "grievances" and the inmate shall be permitted to place grievances in these lock-boxes.***

3. General Population Housing Units

   The Facility Grievance Coordinator/designee will be responsible for the key and retrieval of the lock-box contents each work day.

4. Level 5 Housing Units ***and/or Specialized Housing Units***

   a. The lock-box shall be placed in a location easily accessible to an inmate being escorted to an individual exercise unit and/or shower.

   b. If an inmate chooses not to go to an individual exercise unit and/or shower, he/she may have a staff member place the grievance in the lock-box.

   c. The Facility Grievance Coordinator is responsible for the key and retrieval of the lock-box contents each work day.

5. Inmate Dining Halls

DIXON.DOC003101

a.  This lock-box is for inmates to place their inmate grievances in which the Facility Grievance Coordinator is the only staff member to collect these grievance forms.

b.  The Facility Grievance Coordinator is responsible for the key and the retrieval of the contents of the lock-box each work day.

## C. Initial Review

1.  The Facility Grievance Coordinator/designee shall assign a grievance tracking number to every grievance (even a rejected grievance) upon receipt and enter every grievance into the Automated Inmate Grievance Tracking System.

    a.  The Facility Grievance Coordinator/designee shall enter the date the grievance was received, a summary or description of the grievance subject matter, and the category.

    b.  The Facility Grievance Coordinator/designee may combine multiple grievances from the same inmate that relate to the same subject.

2.  A time extension for filing a grievance will be considered on a case-by-case basis. The inmate must notify the Facility Grievance Coordinator/designee of the reason for the delay. The Facility Grievance Coordinator/designee will consider the reason given and also consider if the delay was caused by:

    a.  a temporary transfer from the facility where the grievance should have been filed;

    b.  a permanent transfer to another facility from the facility where the grievance should have been filed;

    c.  Authorized Temporary Absence (ATA) for an extended period;

    d.  another delay with mail delivery; or

    e.  any other reason the Facility Grievance Coordinator/designee deems appropriate.

    **NOTE**: If it is determined that a delay was caused by a circumstance listed above, a reasonable extension of time for filing shall be permitted.

3.  If the Facility Grievance Coordinator/designee determines that the grievance is properly submitted according to this procedures manual, the Facility Grievance Coordinator/designee will designate a staff member to serve as the Grievance Officer for that grievance. The staff member who serves as the Grievance Officer shall not be directly involved *in* or named as the subject of the grievance in **Section A and/or B** of the **DC-804, Part 1**.

    **NOTE**: The PINK copy of the **DC-804, Part 1** form will be returned to the inmate acknowledging acceptance of the grievance.

Issued: 1/26/2016
Effective: 2/16/2016

DIXON.DOC003102

4.  If the Facility Grievance Coordinator/designee determines that the grievance is not properly submitted according to this procedures manual, it shall be rejected and returned to the inmate with a **Grievance Rejection Form (Attachment 1-C)** enumerating the reason(s) the grievance was rejected.

    a.  When rejected, the entire grievance packet will be returned to the inmate along with any exhibits. The Facility Grievance Coordinator/designee will retain one photocopy of the grievance ***and any exhibits***.

    b.  When the grievance is in regards to Department policy **DC-ADM 008**, the Facility Grievance Coordinator/designee shall do the following:

        (1)  immediately forward a copy of the grievance to the Security Office to be investigated in accordance with Department policy **DC-ADM 008** as well as to the PREA Compliance Manager; and

        (2)  the rejection notice to the inmate shall state: *"Sexual abuse is taken seriously by the Department of Corrections. Any allegations of a sexual nature (abuse/harassment) against a staff member or inmate-on-inmate sexual **abuse** must be investigated to make sure that inmates are safe in this facility. This grievance is being forwarded to the Security Office and the PREA Compliance Manager for initiation of an investigation."*

5.  The Grievance Officer shall:

    a.  submit his/her proposed response to the Facility Grievance Coordinator/designee prior to distribution to the inmate;

    b.  the response shall be typed on the **Initial Review Response Form (Attachment 1-D)**;

    c.  the response shall include a brief rationale summarizing the conclusion and any action taken or recommended to resolve every issue raised as well as any requested relief;

    d.  if a policy is being cited within the initial review response, the specific policy number, section, etc., must be included;

    e.  the response must include one of the following dispositions: Uphold Inmate, Grievance Denied or Uphold in Part/Deny in Part;

    f.  if the grievance is deemed frivolous, the response must include a statement setting forth the reason(s);

    g.  the response shall be provided to the inmate within 15 working days from the date the grievance was entered into the Automated Inmate Grievance Tracking System; and

Issued: 1/26/2016
Effective: 2/16/2016

DIXON.DOC003103

h.  an extension of ten additional working days may be requested from the Facility Grievance Coordinator/designee if the investigation of the grievance is ongoing.

6.  The Facility Grievance Coordinator/designee shall:

a.  review the proposed response from the Grievance Officer for consistency with policy and procedures;

b.  if further review is required, the response will be returned to the Grievance Officer;

c.  if the proposed response is approved, the Facility Grievance Coordinator/designee shall initial the response and return it to the Grievance Officer for distribution to the inmate;

d.  once the Grievance Officer's response is complete, the date of the response and a summary of the Grievance Officer's decision should be entered into the Automated Inmate Grievance Tracking System; and

e.  if an extension is granted to the Grievance Officer, *the extension must be entered into the Automated Inmate Grievance Tracking System and* the inmate must be notified in writing using the **Extension Form (Attachment 1-E)**.

7.  A grievance filed against Parole and/or Central Office staff should not be rejected, except for non-policy compliant reasons. If necessary, Parole and/or Central Office staff can be contacted by the facility to supply information needed for the Grievance Officer to provide a complete response. It should be noted that there may be circumstances in which facility staff cannot address a parole issue. If this occurs, the Grievance Officer should provide a response to the inmate which includes an address and/or contact person from Parole to whom the inmate can direct their issue and/or concern.

## D.  Allegation of Abuse Grievances

1.  This section does not apply to allegations of a sexual nature (abuse/harassment) against a staff member and/or inmate-on-inmate sexual *abuse*. These allegations will be handled in accordance with **Subsection A.6. above** and Department policy **DC-ADM 008**.

2.  A grievance dealing with allegations of abuse shall be handled in accordance with Department policy **DC-ADM 001, "Inmate Abuse."**

3.  This may extend the time for responding to the grievance, but will not alter the inmate's ability to appeal upon his/her receipt of the initial review response.

4.  When a grievance is related to an allegation of abuse, the Facility Grievance Coordinator/designee will issue an **Extension Notice** to the inmate by checking the box "Notice of Investigation" *on the Extension Form.*

Issued: 1/26/2016
Effective: 2/16/2016

DIXON.DOC003104

5. The initial review response will be completed by the assigned Grievance Officer ***after*** the results from the Office of Special Investigations and Intelligence (OSII) are received.

6. If a grievance dealing with allegations of abuse is rejected, the Facility Grievance Coordinator/designee shall:

    a. immediately forward a copy of the grievance to the Security Office to be investigated in accordance with Department policy **DC-ADM 001**; and

    b. the rejection notice to the inmate shall include a statement informing the inmate that his/her grievance was forwarded to the Security Office for investigation in accordance with Department policy **DC-ADM 001**.

**E. Access to Grievances for Special Populations**

1. Pursuant to Department policy **DC-ADM 006, "Reasonable Accommodations for Inmates with Disabilities,"** the Department shall ensure that inmates with disabilities have an equal opportunity to use the grievance system.

2. Written materials will either be delivered in alternative formats that accommodate the inmate's disability or the information will be delivered through alternative methods, such as reading it to the inmate or communicating through an interpreter, which ensure the understanding of the grievance process and material.

3. The Facility Grievance Coordinator/designee will ensure that only staff members, not involved in the grievance, are providing translation for inmates. If a multi-lingual staff member is not available, ***then a current contracted translation service must*** be utilized.

4. Timeline extensions shall be granted in order to secure these services.

Issued: 1/26/2016
Effective: 2/16/2016

DIXON.DOC003105

| DC-804<br>Part 1 | **COMMONWEALTH OF PENNSYLVANIA**<br>**DEPARTMENT OF CORRECTIONS** | FOR OFFICIAL USE<br><br>GRIEVANCE NUMBER |
|---|---|---|

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| FROM: (INMATE NAME & NUMBER) | SIGNATURE OF INMATE: | |
| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: | |

INSTRUCTIONS:
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any actions you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8 ½" x 11" page). State all relief that you are seeking.

B. List actions taken and staff you have contacted, before submitting this grievance.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____          _____
Signature of Facility Grievance Coordinator                                              Date

WHITE Facility Grievance Coordinator Copy      CANARY File Copy      PINK Action Return Copy
GOLDEN ROD Inmate Copy

*DC-ADM 804, Inmate Grievance System Procedures Manual*
*Section 1 – Grievances & Initial Review*                    **Attachment 1-A**
Issued: 1/26/2016
Effective: 2/16/2016

DIXON.DOC003106

# GRIEVANCE WITHDRAWAL
(Facility)
(Address)

This serves to acknowledge receipt of recent communication indicating your desire to withdraw the grievance noted below. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System," the Facility Grievance Coordinator will withdraw this grievance in response to your request.

| Inmate Name: | | Inmate Number: | |
|---|---|---|---|
| **FACILITY:** | | **Date:** | |
| **Grievance:** | | | |

| **Action:** | **Withdrawal** |
|---|---|
| | |

| Inmate's Signature: | | Grievance Officer's Signature: | |
|---|---|---|---|
| **Grievance Officer's Title:** | | | |
| **Date:** | | | |

| Counselor's Name: | | Date: | |
|---|---|---|---|
| **Withdraw Verified:** | ☐ Yes<br>☐ No | | |
| **Comments:** | | | |

cc:   Facility Grievance Coordinator
      Grievance Officer
      DC-15
      File

## Section 2 – Appeals

## A. Appeal to Facility Manager

1. Inmate Responsibilities

    a. An inmate may appeal an initial review response/rejection to the Facility Manager in writing, within 15 working days from the date of the initial review response/rejection.

    b. The initial review response/rejection from the Facility Grievance Coordinator/designee must be received by the inmate before any appeal to the Facility Manager can be sought.

    c. Only an issue that was raised for initial review, determination of frivolousness, and/or rejection may be appealed. An issue raised for Initial review and determination of frivolousness must be raised for appeal at the same time.

    d. Each appeal must:

        (1)   be clearly labeled as an appeal at the top of the document;

        (2)   include the grievance number at the top of the document;

        (3)   be legible, understandable, and presented in a courteous manner;

        (4)   not exceed two pages (two one-sided or one double-sided 8 ½" x 11" page);

        (5)   contain reason(s) for appealing the initial review response/rejection;

        (6)   be handwritten or typed on writing paper or submitted on the **Inmate Appeal to the Facility Manager Form (Attachment 2-A)**;

        (7)   if the inmate is appealing a determination of frivolousness, he/she must clearly indicate that he/she is appealing that determination; and

        (8)   only one appeal of any initial review response/rejection is permitted.

    e. Failure to comply may result in the appeal being dismissed.

    f. Any document(s) attached in support of a grievance appeal, ***including the appeal itself***, becomes part of the official record and will not be returned. The inmate should make copies of the ***appeal, and*** supporting documents, including any facility documents, prior to submission to the Facility Manager for any subsequent appeals.

2-1

2. Staff Responsibilities

   a. The appeal must be addressed by the Facility Manager/designee. The Grievance Officer, ***and/or a staff member involved in or named as the subject of the grievance*** may not be designated to address the appeal.

   b. The Facility Manager/designee will determine whether the appeal is in accordance with this procedures manual. If the appeal is determined to be in accordance with these procedures, the Facility Grievance Coordinator/designee will enter the date the appeal was received into the Automated Inmate Grievance Tracking System.

   c. A time extension for filing ***an appeal*** will be considered on a case by case basis. The inmate must notify the Facility Manager of the reason for the delay. The Facility Manager/designee will consider the reason given and also consider if the delay was caused by:

      (1) a temporary transfer from the facility where the grievance should have been filed;

      (2) a permanent transfer to another facility from the facility where the grievance should have been filed;

      (3) Authorized Temporary Absence (ATA) for an extended period;

      (4) another delay with mail delivery; and

      (5) any other reason the Facility Manager/designee deems appropriate.

   **NOTE**: If it is determined that a delay was caused by a circumstance listed above, a reasonable extension of time for filing shall be permitted.

   d. The Facility Manager/designee shall:

      (1) notify the inmate using the **Facility Manager's Appeal Response (Attachment 2-B)** of his/her decision within 15 working days of receiving the appeal;

      (2) one of the following dispositions must appear on the appeal response: Uphold Response, Uphold Inmate, Dismiss/Dismiss Untimely or Uphold in Part/Deny in Part;

      (3) a brief statement of the reason(s) for the decision must be included. All appeal points raised by the inmate shall be addressed including the determination of frivolousness of appealed;

      (4) the Facility Manager/designee may authorize an extension of up to ten additional working days if the investigation of the appeal is ongoing. If an extension is

Issued: 1/26/2016
Effective: 2/16/2016

DIXON.DOC003109

necessary, the inmate shall be advised in writing using the **Extension Form (Attachment 1-E)**; and

(5)   alternatively, the Facility Manager/designee may remand the initial review response/rejection to the Grievance Officer for further investigation and/or reconsideration.

e.  Remand

(1)   When the Facility Manager/designee remands a grievance, notification of the remanded grievance will be provided to the Grievance Officer on the **Remand Grievance – Notice to Grievance Officer (Attachment 2-C)**.

(2)   Notification of the remanded grievance will also be provided to the inmate on the **Remand Grievance – Notice to Inmate (Attachment 2-D)**.

(3)   The Grievance Officer shall respond to the inmate within 15 working days.

(4)   The revised response shall be returned to the Facility Manager/designee for review prior to sending it to the inmate.

(5)   The inmate may again appeal to the Facility Manager within 15 working days from the date of the revised initial review response.

(6)   The determination to remand the initial review response/rejection may not be appealed or made the subject of a new grievance.

f.  The Facility Grievance Coordinator/designee shall enter the date and a summary of the Facility Manager/designee's decision into the Automated Inmate Grievance Tracking System.

g.  Personal property related to a grievance shall not be disposed of if the inmate notifies the Facility Manager/designee or Facility Grievance Coordinator/designee to retain the property as required in **Section 1** of this procedures manual. If notification is given, the property related to the grievance shall be placed in a safe location until final disposition is made by the Secretary's Office of Inmate Grievances and Appeals (SOIGA). The inmate will have 20 working days from the date the final SOIGA decision is received to notify the Facility Grievance Coordinator/designee in writing with his/her signature that he/she intends to file a court action relating to the confiscated property. The subject property will be labeled to indicate that it is being held pending possible further legal action and will note the expiration date of the 20 working days. If no notice in writing signed by the inmate is given to the Facility Grievance Coordinator/designee by the end of the 20 working days, the inmate will be told to decide whether the property is to be shipped or destroyed. When the final court proceeding is concluded, the inmate shall, within 20 working days, notify the Facility Grievance Coordinator/designee in writing that the lawsuit is concluded and whether the property is to be shipped or destroyed. Any refusal or failure to select an option

Issued: 1/26/2016
Effective: 2/16/2016

DIXON.DOC003110

will be documented by the Property Officer and will result in the property being destroyed. If the option to have the property shipped is chosen, the property will be shipped at the inmate's expense. An inmate's failure to communicate the final court disposition to the Facility Grievance Coordinator/designee within 20 working days may result in the property being destroyed with no notice to the inmate.

## B. Appeal to Final Review

1. Inmate Responsibilities

   a. The decision from the appeal to the Facility Manager/designee must be received by the inmate before an appeal to Final Review can be sought.

   b. Any inmate who is dissatisfied with the disposition of an appeal from the Facility Manager/designee may submit an **Inmate Appeal to Final Review (Attachment 2-E)** within 15 working days from the date of the Facility Manager/designee's decision. Only issues *raised in the initial grievance and/or* appealed to the Facility Manager may be appealed to Final Review.

   c. A time extension for filing a grievance appeal to final review will be considered on a case by case basis. The inmate must notify the Chief Grievance Officer of the reason for the delay. The Chief Grievance Officer/designee will consider the reason given and also consider if the delay was caused by:

      (1) a temporary transfer from the facility where the grievance should have been filed;

      (2) a permanent transfer to another facility from the facility where the grievance should have been filed;

      (3) ATA for an extended period;

      (4) another delay with mail delivery; or

      (5) any other reason the Chief Grievance Officer/designee deems appropriate.

      **NOTE**: If it is determined that a delay was caused by a circumstance listed above, a reasonable extension of time for filing shall be permitted.

   d. An appeal to Final Review will not be permitted until the inmate has complied with all procedures established for Initial Review in accordance with **Section 1** of this procedures manual and for Appeal to the Facility Manager in accordance with **Subsection A. above**.

   e. Each appeal must:

      (1) be clearly labeled as an appeal at the top of the document;

2-4

(2)   include the grievance number at the top of the document;

(3)   be legible, understandable, and presented in a courteous manner;

(4)   not exceed two pages (two one-sided or one double-sided 8 ½" x 11"page);

(5)   contain reason(s) for appealing the Facility Manager/designee's decision;

(6)   be handwritten or typed on writing paper or submitted on the **Inmate Appeal to Final Review**;

(7)   if the inmate is appealing a determination of frivolousness, he/she must clearly indicate that he/she is appealing that determination;

(8)   only one grievance may be appealed on a piece of paper unless combined by the Facility Manager/designee; and

(9)   only one appeal of any Facility Manager/designee's response is permitted.

f.   Failure to comply may result in the appeal being dismissed.

g.   An inmate filing an appeal related to a claim of missing property must provide documentation such as a **DC-153A, Personal Property Inventory Sheet**; **DC-154A, Confiscated Items Receipt**; or a **Commissary/Outside Purchase Form** for evidence or proof that property items were once in his/her possession. Failure to do so may result in dismissal of the appeal.

h.   An inmate filing a grievance contesting the accuracy of the Notification of Deductions Memo and/or the Notification of Amended Deductions Memo in accordance with Department policy **DC-ADM 005, "Collection of Inmate Debts**," must provide valid, official court documentation proving that:

(1)   the financial obligations have previously been paid;

(2)   the information submitted on the official court documents by the Clerk of Courts was incorrect;

(3)   for a sentencing occurring prior to December 26, 2010, the sentencing judge did not impose court costs;

(4)   for a sentencing occurring on or after December 26, 2010, the sentencing judge specifically waived court costs;

(5)   in the case of an obligation for restitution, reparation, fines or penalties, the sentencing court did not specifically order you to pay such obligation regardless of the date of sentence;

2-5

DIXON.DOC003112

    (6)   a more recent court order removed or postponed the financial obligations;

    (7)   the financial obligations are not currently due under the terms of the court order;

    (8)   the Crime Victim Compensation/Victim's Services Fee was not computed in accordance with law;

    (9)   the court costs are related to an adjudication of delinquency, and you have attained the age of 21. If you are not yet 21, and are paying these fees, you should notify the business office on your 21st birthday; or

   (10)   you do not owe the financial obligations for any other reason.

    **NOTE**: Failure to provide any of the above with your grievance may result in your appeal being dismissed.

i.   Every appeal to Final Review must be addressed to the following:

    **Chief, Secretary's Office of Inmate Grievances and Appeals**
    **Department of Corrections**
    **1920 Technology Parkway**
    **Mechanicsburg, PA 17050**

    Failure to properly address the appeal will delay the process.

j.   An inmate appealing a grievance to final review is responsible for providing the SOIGA with all required documentation relevant to the appeal. A proper appeal to final review must include:

    (1)   a legible copy of the Initial Grievance;

    (2)   a copy of the initial review response/rejection and/or remanded initial review response/rejection;

    (3)   a legible copy of the Inmate Appeal to the Facility Manager;

    (4)   a copy of the Facility Manager/designee's decision and/or remanded Facility Manager/designee's decision;

    (5)   a written appeal to the SOIGA;

    (6)   failure to provide any of the documentation noted above may result in the appeal being dismissed; and

    (7)   the copies of the initial review response/rejection and the Facility Manager/designee's decision cannot be handwritten.

Issued: 1/26/2016
Effective: 2/16/2016

DIXON.DOC003113

k. An indigent inmate as defined in Department policy **DC-ADM 803, "Inmate Mail and Incoming Publications,"** will be afforded copy service and legal postage up to a maximum of $10.00 per month and all money received in the inmate's account shall be used to pay for the cost of the copies and legal postage. A non-indigent inmate will incur copying charges in accordance with Department policy **3.1.1, "Fiscal Administration."**

l. Any documentation submitted in support of the appeal to final review will become part of the official record and will not be returned. The inmate should make copies of supporting documents, including facility documents, prior to submission to final review.

2. Staff Responsibilities

a. The SOIGA will ensure that:

(1) an appeal to final review is responded to within 30 working days of receipt unless otherwise extended ***and/or referred***;

(2) an appeal and response are properly maintained in the Automated Inmate Grievance Tracking System; and

(3) the Chief of SOIGA may authorize an extension of up to ten additional working days if the investigation of the appeal is ongoing. If an extension is necessary, the inmate shall be advised in writing using the **Extension Form (Attachment 1-E)**.

b. Upon request, the Facility Manager/designee will forward to the SOIGA a copy of any formal investigation related to a grievance.

c. The SOIGA will review the **DC-804, Part 1**, the initial review response/rejection, the **Inmate Appeal to the Facility Manager**, the Facility Manager/designee's response, any investigative report(s), any attached exhibits and the **Appeal to Final Review**.

d. Upon completion of the review, SOIGA will respond directly to the inmate in all cases using the **Final Appeal Decision (Attachment 2-F)** or the **Final Appeal Decision Dismissal (Attachment 2-G)**. If the inmate is released/paroled, he/she must provide a forwarding address to SOIGA. SOIGA will forward the final review response to the address provided or, if no address is provided, to the last address of record for the inmate.

e. SOIGA will issue a decision with one of the following dispositions: Uphold Response, Uphold Inmate, Dismiss, or Uphold in Part/Deny in Part.

(1) The Chief/designee, SOIGA, shall notify the inmate and the Facility Manager of the decision and rationale.

Issued: 1/26/2016
Effective: 2/16/2016

DIXON.DOC003114

(2) If the decision consists of amending or remanding the grievance ***response***, or if the decision is to uphold the inmate or uphold the inmate in part, the appropriate ***Regional*** Deputy Secretary shall also be notified.

(3) In any instance where a determination of frivolousness is overturned, the Facility Grievance Coordinator shall also be notified.

(4) Alternatively, the Chief Grievance Officer/designee may remand the grievance to the Facility Manager for further investigation/reconsideration and/or may review/refer an appeal with/***to*** a different bureau.

f. Referrals

(1) When an appeal is referred to a bureau for review (health care issues with the Bureau of Health Care Services (BHCS), education issues with the Bureau of Correction Education (BCE), etc.) notification of the referral will be provided to the appropriate bureau on the **Grievance Referral (Request to Bureau/Office) (Attachment 2-H)**.

(2) Notification of the referred grievance will be provided to the inmate on the **Grievance Referral (Notice to Inmate) (Attachment 2-I)**.

(3) This review/referral may result in an extension to the time for issuing a final review response to the inmate.

(4) Once a response from the relevant bureau is received by the SOIGA, a final review response will be issued to the inmate.

g. Remand

(1) When an appeal is remanded to the facility for further review notification of the remanded grievance will be provided to the Facility Manager/designee on the **Remand Grievance (Notice to Facility Manager) (Attachment 2-J)**.

(2) Notification of the remanded grievance will also be provided to the inmate on the **Remand Grievance (Notice to Inmate) (Attachment 2-K)**.

(3) Once the investigation is completed, the Facility Manager/designee will provide a revised response to the inmate, with a copy to the Chief of SOIGA, within 15 working days.

(4) If the inmate is dissatisfied with the revised response, he/she may appeal to final review again within 15 working days of the date of the revised response.

(5) ***Once an appeal to a remanded grievance is received at final review, the SOIGA will have 30 working days in which to complete a response.***

Issued: 1/26/2016
Effective: 2/16/2016

DIXON.DOC003115

*DC-ADM 804, Inmate Grievance System Procedures Manual*
*Section 2 – Appeals*

(6)   The determination to remand the grievance may not be made the subject of a new grievance.

h.   The Chief, SOIGA, in consultation with the Secretary, shall take any action deemed necessary to ensure the integrity of this policy. This includes, but is not limited to:

(1)   prohibiting the transfer of an inmate until the grievance procedure has been completed, including the appeal process; and

(2)   lifting a previously imposed grievance restriction.

i.   The Chief, SOIGA/designee shall notify the Facility Manager in those cases where the suspension of an inmate's transfer is being considered pending the disposition of the appeal process.

j.   If an inmate who has filed a grievance is transferred, paroled, or released prior to the appeal process being completed, the inmate may continue to pursue the grievance or appeal by notifying the Facility Manager of the facility where the grievance was originally filed. Adjustments shall be made to the various time limitations in order to allow for review.

## C.   *Appeal of Publication or Photograph Denial*

1.   *As set forth in Department policy DC-ADM 803, an inmate may appeal the denial of a publication/photograph by filing a grievance under the provisions of this procedures manual.*

2.   *In order to appeal the Incoming Publication Review Committee's (IPRC) denial of a publication/photograph, the inmate must:*

a.   *address his/her publication/photograph appeal to the Facility Manager on a DC-804, Part 1 within 15 working days from the date of the Notice of Incoming Publication Denial; and*

b.   *include a copy of the Notice of Incoming Publication Denial Form in accordance with Department policy DC-ADM 803, disapproving the publication/photograph.*

3.   *Publication/Photograph Appeal at the Initial Level/Staff Responsibilities*

a.   *When an inmate files an appeal to the denial of a publication/photograph, the Facility Grievance Coordinator/designee shall assign a grievance tracking number to the publication/photograph appeal.*

b.   *The Facility Manager/designee shall:*

Issued: 1/26/2016
Effective: 2/16/2016

DIXON.DOC003116

(1) *review the publication/photograph appeal in addition to the Notice of Incoming Publication Denial Form and the publication/photograph and complete a response within 15 working days of receiving the appeal; and*

(2) *include the grievance tracking number and the name of the publication/photograph (or other description) in his/her response to the inmate.*

4. *Publication/Photograph Appeal to SOIGA*

a. *An inmate appealing a publication/photograph disapproval to Final Review is responsible for providing SOIGA with all required documentation relevant to the appeal. A proper publication/photograph appeal to Final Review must include a copy of the Notice of Incoming Publication Denial Form, appeal to the Facility Manager, the Facility Manager/designee's decision, and a written appeal to Final Review.*

b. *Failure to provide the proper documentation may result in the final appeal being dismissed.*

c. *SOIGA will refer the grievance appeal challenging the denial of a publication for content reasons to the Office of Policy, Grants, and Legislative Affairs for review.*

## D. State Intermediate Punishment (SIP) Appeals

1. A SIP participant may appeal an expulsion from the SIP program by filing a grievance to the Facility Grievance Coordinator of the facility housing the inmate within ten days of the date of the expulsion letter. The Facility Grievance Coordinator/designee will assign the grievance a number and email it to "CR, SIP Appeals/Grievance" for review and response in accordance with **37 Pa. Code §97.116**.

2. The grievance must be legible and the statement of facts may not exceed two pages.

3. A participant is responsible for including all required documentation with the grievance. Failure to provide relevant documentation may result in the grievance being dismissed.

4. A participant who is indigent as defined in Department policy **DC-ADM 803**, will be afforded copy service and legal postage up to a maximum of $10.00 per month and all money received in the inmate's account shall be used to pay for the cost of the copies and legal postage. A non-indigent inmate will incur copying charges in accordance with Department policy **3.1.1**.

5. Any documentation submitted in support of a grievance will not be returned. The participant should make a copy of any supporting documentation for submission with the grievance.

Issued: 1/26/2016
Effective: 2/16/2016

DIXON.DOC003117

6. The Executive Deputy Secretary/designee may decide the grievance based upon the documentation presented as well as other information contained within the Department's files and may interview the inmate and any involved staff member or contractor employee by means of videoconferencing if the Executive Deputy Secretary/designee in his/her sole discretion, believes an interview will assist him/her in understanding and evaluating the grievance.

7. In reviewing a grievance, the Executive Deputy Secretary/designee shall determine whether the participant violated the conditions of his/her Drug Offender Treatment Program (DOTP) or was meaningfully participating in the DOTP. The Executive Deputy Secretary/designee may uphold or reverse the expulsion or take any other action that could have been taken by the Chief of the Department's Bureau of Treatment Services (BTS), Treatment Division, with respect to the alleged conduct at issue.

## E. Grievance Reports

1. SOIGA provides a detailed monthly report to Central Office's administrative staff and Facility Managers indicating grievances filed, related trends, and any noted concerns. This report compares the previous year's grievance information to the current year's grievance information.

2. Central Office's administrative staff review any noted concerns or elevated numbers with the Facility Managers.

3. The Chief Grievance Officer meets with the Secretary, as necessary, to discuss any noted concerns or elevated numbers.

Issued: 1/26/2016
Effective: 2/16/2016

DIXON.DOC003118

**SCI**
## INMATE APPEAL TO FACILITY MANAGER
## GRIEVANCE

| Inmate Number | NAME | HOUSING UNIT | DATE | GRIEVANCE# |
|---|---|---|---|---|
| | | | | |

**I received my initial response from the Grievance Office/Coordinator on _____
and have the following appeal issues.**

**Refer to DC-ADM 804, Grievance Appeal Procedures, for complete instructions.**

**Please provide a BRIEF (no longer than two pages) appeal statement.**

INMATE SIGNATURE:_____

*DC-ADM 804, Inmate Grievance System Procedures Manual*
*Section 2 – Appeals*                                            *Attachment 2-A*
Issued: 1/26/2016
Effective: 2/16/2016

DIXON.DOC003119

# INMATE APPEAL TO FINAL REVIEW
# GRIEVANCE

| INMATE NUMBER | NAME | FACILITY | DATE | GRIEVANCE# |
|---|---|---|---|---|
| | | | | |

**I received my appeal from the Superintendent on** _____ **and have the following appeal issues.**

**Refer to DC-ADM 804, Grievance Appeal Procedures, for complete instructions.**
**Appeals must relate to the issue presented in the initial grievance and 1st level appeal.**

**Please provide a BRIEF (no longer than two pages) appeal statement.**

|   |
|---|
|   |
|   |
|   |
|   |
|   |
|   |
|   |
|   |
|   |
|   |
|   |
|   |
|   |
|   |
|   |
|   |
|   |
|   |
|   |
|   |

## INMATE SIGNATURE: _____

*DC-ADM 804, Inmate Grievance System Procedures Manual*
*Section 2 – Appeals*                                    *Attachment 2-E*
Issued: 1/26/2016
Effective: 2/16/2016

DIXON.DOC003120

Case 3:17-cv-01827-RDM-SES  Document 90-1  Filed 07/29/19  Page 37 of 50

*DC-ADM 804, Inmate Grievance System Procedures Manual*
*Section 3 – Grievance Restriction or Grievance Restriction Extension*

**Section 3 – Grievance Restriction or Grievance Restriction Extension**

**A. Grievance Restriction**

1. An inmate who has filed five grievances within a 30-day period which have been determined to be frivolous may be placed on grievance restriction.

    a. The maximum length of the grievance restriction period is 90 days.

    b. An inmate placed on grievance restriction shall be notified via the **Grievance Restriction Notice (Attachment 3-A)**.

    c. Once an inmate is placed on grievance restriction, he/she may file no more than one grievance each 15 working days.

    d. The grievance restriction period begins on the date of the written notice to the inmate of the grievance restriction.

    e. The 15 working day period during which one grievance may be filed begins on the 1st working day immediately following the date of the written notice to the inmate of the grievance restriction.

2. The frivolous grievances used to place an inmate on grievance restriction must be within a 30-day period from when the inmate initially filed the frivolous grievances (date of the first frivolous grievance received).

3. A grievance that was withdrawn after an initial review response has been distributed to the inmate shall be considered for grievance restriction if deemed frivolous by the Grievance Officer.

4. The Facility Grievance Coordinator shall provide the inmate with written notice of the grievance restriction on the **Grievance Restriction Notice** and the reason(s) for it.

    NOTE: A copy of the **Grievance Restriction Notice** shall be forwarded to the Regional Deputy Secretary, the Facility Manager and the Secretary's Office of Inmate Grievances and Appeals (SOIGA).

5. It is the inmate's responsibility to determine which issues to grieve while on grievance restriction.

6. An inmate will not be denied a **DC-804, Part 1** due to being placed on grievance restriction.

7. An inmate may appeal a grievance restriction and/or a grievance restriction extension in accordance with **Subsections B. & C. below**.

Issued: 4/27/2015
Effective: 5/1/2015

DIXON.DOC003121

Case 3:17-cv-01827-RDM-SES   Document 90-1   Filed 07/29/19   Page 38 of 50

**DC-ADM 804, Inmate Grievance System Procedures Manual**
**Section 3 – Grievance Restriction or Grievance Restriction Extension**

8. If the Facility Manager/designee determines during the grievance restriction review that the inmate has not submitted five frivolous grievances, the inmate may be removed from grievance restriction. The Regional Deputy Secretary and the SOIGA shall be notified that the restriction was lifted.

9. A prior grievance that was rejected cannot be used towards the number of five frivolous grievances when placing an inmate on grievance restriction. A grievance must be found frivolous in order to be used toward placement on grievance restriction.

10. If an inmate files one or more frivolous grievances while on grievance restriction, the Facility Manager may request an additional 30-day period of restriction through the Regional Deputy Secretary. A copy of the request shall be forwarded to the SOIGA for tracking purposes.

    NOTE: An inmate placed on grievance restriction extension shall be notified via the **Grievance Restriction Extension Notice (Attachment 3-B)** and he/she may file no more than one grievance each 15 working days.

11. A grievance restriction or grievance restriction extension issued at one facility will be continued if the inmate is transferred to another facility.

12. ***A grievance restriction/extension may be suspended if an inmate is sent on an Authorized Temporary Absence (ATA)/Temporary Transfer (TT) for an extended period of time.***

## B. Appeal to Facility Manager

1. Inmate Responsibilities

   a. An inmate may appeal a grievance restriction or grievance restriction extension, to the Facility Manager in writing, within 15 working days from the date of the notice of a grievance restriction or grievance restriction extension.

   b. The **Grievance Restriction Notice** or **Grievance Restriction Extension Notice** must be received by the inmate before any appeal to the Facility Manager can be sought.

   c. Only the placement on grievance restriction or grievance restriction extension can be appealed.

   d. Each appeal must be clearly labeled as an appeal at the top of the document. The text of an appeal must be legible, understandable and presented in a courteous manner. The statement of facts must not exceed two pages, must contain reason(s) for the appeal and must be handwritten or typed on writing paper (two one-sided or one double-sided 8 ½" x 11" page), or may be submitted on the **Appeal to the Facility Manager Form** (refer to **Section 2** of this procedures manual).

Issued: 4/27/2015
Effective: 5/1/2015

DIXON.DOC003122

Case 3:17-cv-01827-RDM-SES   Document 90-1   Filed 07/29/19   Page 39 of 50

**DC-ADM 804, Inmate Grievance System Procedures Manual**
**Section 3 – Grievance Restriction or Grievance Restriction Extension**

2. Staff Responsibilities

    a. The appeal must be addressed by the Facility Manager/designee.

    b. A time extension for filing a grievance will be considered on a case-by-case basis. The inmate must notify the Facility Grievance Coordinator of the delay. The Facility Grievance Coordinator will consider the reason given and also consider if the delay was caused by:

        (1) a Temporary Transfer (TT) from the facility where the grievance should have been filed;

        (2) a permanent transfer to another facility from the facility where the grievance should have been filed;

        (3) ATA for an extended period;

        (4) another delay with mail delivery; or

        (5) any other reason the Facility Grievance Coordinator deems appropriate.

        NOTE: If it is determined that a delay was caused by a circumstance listed above, a reasonable extension of time for filing shall be permitted.

    c. The Facility Manager/designee shall notify the inmate using the **Facility Manager's Appeal Response** (refer to **Section 2** of this procedures manual) within 15 working days of receiving the appeal.

        (1) A brief statement of the reason(s) for the decision must be included.

        (2) Alternatively, the Facility Manager/designee may overturn the grievance restriction placement.

## C. Appeal to Final Review

1. Inmate Responsibilities

    a. The decision from the appeal to the Facility Manager must be received by the inmate before an appeal to Final Review can be sought.

    b. Any inmate who is dissatisfied with the disposition of an appeal from the Facility Manager may submit an **Inmate Appeal to Final Review Form** (refer to **Section 2** of this procedures manual) within 15 working days from the date of the Facility Manager/designee's decision). Only issues related to the placement of grievance restriction or grievance restriction extension may be appealed to Final Review.

Issued: 4/27/2015
Effective: 5/1/2015

DIXON.DOC003123

c. A time extension for filing a grievance will be considered on a case-by-case basis. The inmate must notify the Facility Grievance Coordinator of the reason for the delay. The Facility Grievance Coordinator will consider the reason given and also consider if the delay was caused by:

    (1) a temporary transfer from the facility where the grievance should have been filed;

    (2) a permanent transfer to another facility from the facility where the grievance should have been filed;

    (3) ATA for an extended period; or

    (4) another delay with mail delivery.

    NOTE: If it is determined that a delay was caused by a circumstance listed above, a reasonable extension of time for filing shall be permitted.

d. An appeal to Final Review will not be permitted until the inmate has complied with all procedures established for grievance restriction or grievance restriction extension in accordance with **Subsections A. and B. above**.

e. The text of an appeal to the SOIGA must be legible, understandable and presented in a courteous manner. The statement of facts must not exceed two pages, and must be handwritten or typed on writing paper (two one-sided or one double-sided 8 ½" x 11" page), or may be submitted on the **Inmate Appeal to Final Review Form** (refer to **Section 2** of this procedures manual).

f. The appeal must contain a reason for appealing the Facility Manager/designee's decision.

g. Every appeal to Final Review must be addressed to the following:

    Chief, Secretary's Office of Inmate Grievances and Appeals
    Department of Corrections
    1920 Technology Parkway
    Mechanicsburg, PA 17050

    NOTE: Failure to properly address the appeal will delay the process.

h. An inmate appealing a grievance restriction or grievance restriction extension to Final Review is responsible for providing the SOIGA with all required documentation relevant to the appeal. This appeal paperwork must include:

    (1) a copy of the written notice of placement on grievance restriction or grievance restriction extension from the Facility Grievance Coordinator;

3-4

Case 3:17-cv-01827-RDM-SES   Document 90-1   Filed 07/29/19   Page 41 of 50

**DC-ADM 804, Inmate Grievance System Procedures Manual**
**Section 3 – Grievance Restriction or Grievance Restriction Extension**

(2)   the appeal of the grievance restriction or grievance restriction extension placement to the Facility Manager;

(3)   the Facility Manager/designee's Response; and

(4)   a written appeal to the SOIGA.

NOTE: The copies of the grievance restriction notice or grievance restriction extension and the Facility Manager/designee's Response cannot be handwritten. Failure to provide any of the documentation noted above may result in the appeal being dismissed.

i.   An indigent inmate as defined in Department policy **DC-ADM 803, "Inmate Mail and Incoming Publications,"** will be afforded copy service and legal postage up to a maximum of $10.00 per month and all money received in the inmate's account shall be used to pay for the cost of the copies and legal postage. A non-indigent inmate will incur copying charges in accordance with Department policy **3.1.1, "Fiscal Administration."**

j.   Any documentation submitted in support of a grievance restriction or grievance restriction extension appeal will become part of the official record and will not be returned. The inmate should make copies of supporting documents, including facility documents, prior to submission to Final Review.

2.   Staff Responsibilities

a.   The SOIGA will ensure that:

(1)   an appeal to Final Review is responded to within 30 working days of receipt unless otherwise extended;

(2)   the Chief of SOIGA may authorize an extension of up to 10 additional working days if the investigation of the appeal is ongoing. If an extension is necessary, the inmate shall be advised in writing. This may be done using the **Extension Form** (refer to **Section 1** of this procedures manual).

b.   SOIGA will review the **Grievance Restriction Notice** or **Grievance Restriction Extension Notice**, the **Appeal to Facility Manager**, **Facility Manager/Designee's Response** and the **Appeal to Final Review**.

c.   Upon completion of the review, SOIGA will respond directly to the inmate in all cases using the **Final Appeal Decision** or **Final Appeal Decision Dismiss** (refer to **Section 2** of this procedures manual). If the inmate is released/paroled, he/she must provide a forwarding address to SOIGA. SOIGA will forward the Final Review response to the address provided or, if no address is provided, to the last address of record for the inmate.

Issued: 4/27/2015
Effective: 5/1/2015

DIXON.DOC003125

d. SOIGA will issue a decision with one of the following dispositions: Uphold Response, Uphold Inmate, Dismiss, or Uphold in Part/Deny in Part. The Chief/designee, SOIGA, shall notify the inmate and the Facility Manager of the decision and rationale.

e. The Chief, SOIGA, in consultation with the Secretary, shall take any action deemed necessary to ensure the integrity of this policy. This includes, but is not limited to:

   (1) prohibiting the transfer of an inmate until the grievance procedure has been completed, including the appeal process; and

   (2) lifting a previously imposed grievance restriction.

f. The Chief/designee, SOIGA/designee shall notify the Facility Manager in those cases where the suspension of an inmate's transfer is being considered pending the disposition of the appeal process.

g. If an inmate who has filed a grievance is transferred prior to the appeal process being completed, the inmate may continue to pursue the grievance or appeal by notifying the Facility Manager of the facility where the grievance was originally filed. Adjustments shall be made to the various time limitations in order to allow for review.

Issued: 4/27/2015
Effective: 5/1/2015

DIXON.DOC003126

**DC-ADM 804, Inmate Grievance System Procedures Manual**
**Glossary of Terms**

**Automated Inmate Grievance Tracking System** – A computerized system maintained by the Secretary's Office of Inmate Grievances and Appeals designed to store and retrieve data and trends pertaining to the Inmate Grievance System.

**Appeal to Facility Manager** – The second step of the formal Initial Grievance process during which the Facility Manager/designee reviews the decision of the Grievance Officer.

**Chief, Secretary's Office of Inmate Grievances and Appeals** – A management level employee assigned to the Secretary's Office of Inmate Grievance and Appeals by the Secretary to oversee the inmate grievance and appeal process, train field staff, and respond to appeals.

**Courteous Manner** – The grievance and/or appeal should be written without the use of abusive language, profanities, name calling, etc.

**Department** – The Pennsylvania Department of Corrections.

**Facility Grievance Coordinator** – The Corrections Superintendents Assistant (CSA)/designee in a facility, or a Community Corrections Regional Director/designee, who is responsible for the overall administration of the Inmate Grievance System in that facility/region. This includes determining whether the grievance was filed in compliance with the policy, as well as the data collection, tracking, and statistical reporting.

**Facility Manager** – The Superintendent of a State Correctional Facility, State Regional Correctional Facility, or Motivational Boot Camp, Director of a Community Corrections Center or the Director of the Training Academy.

**Final Review** – The third step of the formal Initial Grievance process during which the Secretary's Office of Inmate Grievances and Appeals reviews the decision of the Facility Manager/designee.

**Frivolous Grievance** – A grievance is frivolous when it is found that the allegations or the relief sought lack any arguable basis in law, fact and/or policy.

**Grievance** – A formal written complaint by an inmate related to a problem encountered during the course of his/her confinement.

**Grievance Rejection Form** – The form used to return a grievance to an inmate when the grievance is not in compliance with this procedures manual.

**Grievance Officer** – An appropriate Department Head or management level staff person designated by the Facility Grievance Coordinator to provide initial review of an inmate grievance arising from his/her specific area of responsibility (a Unit Manager would be assigned to provide initial review of a grievance regarding a housing unit).

**Grievance Restriction** – A limitation on the number and frequency of grievances an inmate may file.

**Initial Review** – The first step of the Initial Grievance process during which a Grievance Officer reviews an inmate grievance.

**Retaliation** – An act of vengeance or threat of action against an inmate or staff in response to an inmate complaint of a problem. Examples include, but are not limited to, unnecessary discipline, intimidation, unnecessary changes in work or program assignments, unjustified transfers or placements, unjustified denials of privileges and services.

**Secretary** – The Secretary of the Department of Corrections.

**Secretary's Office of Inmate Grievances and Appeals (SOIGA)** – The office responsible for review and disposition of all appeals to Final Review arising under this policy.

**Working Days** – For the purposes of this policy, working days are Monday through Friday, excluding state holidays.

# EXHIBIT A

## ATTACHMENT 2

| Inmate # | Grievance # | Grievance Dt | Grievance Category | FAC | Grievance Comment | Initial Grievance Disposition | Initial Compl. Dt | Appeal Grievance Disposition | Appeal Compl. Dt | Final Grievance Disposition | Final Compl. Dt |
|---|---|---|---|---|---|---|---|---|---|---|---|
| OT5426 | 605287 | 01/06/16 | Health Care | MUN | I slammed my right forearm in the dishwasher in CK. I have put in numerous sick calls. The first one they replied ain't nothing wrong with it! The next sick call I noticed swelling and I couldn't bend nor move it. Mrs. Young gave me ice and sent me on my way. 2 months later I drop another sick call regarding my arm because now I'm losing all feelings in my right arm. It's so painful to even move. When I wake up in the morning I have to take my left arm and adjust my right arm to even get out of bed. It's like a pinch nerve or something. It's constantly in pain. I got a x-ray done but I need to be taken out to a hospital to seek medical treatment! I wrote Blair Morrison numerous request and she replies back write a sick call! Yup I did 3 months ago! My arm is still inflammed, and not able to bend. Something is terribly wrong with it! | NULL | NULL | NULL | NULL | NULL | NULL |
| OT5426 | 607412 | 01/20/16 | Health Care | MUN | On Janauary 14, 2016 I went to sick call because I am still having problems bending my arm. During the RN's and Physician's looking through my files they noticed that my xray was wrong that the man who gave me my x-ray actually submitted my left forearm. So this whole time since 11/11/2015 I been complaining about being in pain. And Medical kept saying my x-ray says that I'm fine it's because it's somebody else's x-ray. My right arm is severly in pain. The dishwasher was broken in the middle handler. So when I was cleaning it, it came down on my arm. Ms. Paez said I was going to be on the call out tomorrow to get my x-ray done. When I was getting my x-ray done the first time they never did my left arm. So for them to have an x-ray of an left forearm is unaccuarte! I am in severe pain and need to be seen by a doctor. I go for my new x-ray supposely 1/15/16! | Grievance Denied | 01/29/16 | NULL | NULL | NULL | NULL |
| OT5426 | 617495 | 03/17/16 | Prob w/ Staff-Officers | MUN | On March 10, 2016 at 7:20 pm - 7:30 my shower curtain was ripped open by Officer Fornwald. I felt violated, I was molested as a child. She asked me was another inmate in the shower with me? I stated No! She first opened the bottom of the shower curtains I guess to see the feet. She was still yelling about a inmate from another block being on BB illegally. I closed my shower curtain on her and started yelling that she should have asked me to put some clothes on and step out. She came back to my shower after witnessing that I was the only one in my shower and yanked it open again. Now my body is exposed to the common room. I closed it. she yanked it open again and got in my face yelling about how she is a female guard and she is looking for a inmate. I called her a freak and she called me a freak also. I put some clothes on and asked to speak to a Sgt or white shirt. She said they was busy. So in the morning I tried to speak to Lt. Craver he told me to get out of his face he was dealing with this issue all night. I also spoke to Sgt. King but he said Sgt. Quick was the Sgt on shift. I feel violated and something needs to be done. Theres ways this could have been handled. I shouldn't feel vulnerable, violated. | NULL | NULL | NULL | NULL | NULL | NULL |
| OT5426 | 628499 | 06/03/16 | Health Care | MUN | I slammed my right forearm in the CK dishwasher in Oct 2015 My physical therapist is recommed I get surgery on my arm. Theres a nerve that is damaged and I got scared tissue blocking me from ultizing my arm. I have no mobility in my arm. My therapist recommend I see the doctor I been writing doctor freeland since Oct 2015. She doesn't reply back. My last time writing her was 5/25/16. I am being neglected of proper medical care. | Grievance Denied | 07/06/16 | NULL | NULL | NULL | NULL |

DEF.DOC000214

| Inmate # | Grievance # | Grievance Dt | Grievance Category | FAC | Grievance Comment | Initial Grievance Disposition | Initial Compl. Dt | Appeal Grievance Disposition | Appeal Compl. Dt | Final Grievance Disposition | Final Compl. Dt |
|---|---|---|---|---|---|---|---|---|---|---|---|
| OT5426 | 629319 | 06/09/16 | Property | MUN | On May 12 2016, Search Team Williams and McPeek searched my cell. 3 state teeshirts and 1 pair of pants were torn and ripped. William said I can take the CIR to storeroom and get new ones. But because McPeek signed the CIR and wrote altered I can't get new ones! Williams the guy and CO George tried to fix it. CIR 899231 my clothes were not altered so I don't see why I got to pay for them. I wrote CO McPeek and she stated I should have not signed it! I accept what was written.That is not right! 5/23/16 she wrote me back - McPeek | Uphold Inmate | 07/24/16 | NULL | NULL | NULL | NULL |
| OT5426 | 646943 | 10/12/16 | Health Care | MUN | I hurt my arm in CK Dishwasher.  The middle door was broke and during me cleaning the machine the door slammed on my forearm. That was oct 2015. I have been dischaged from PT. I went to the hospital geisinger.  They stated it's not that serious!  I can not bend my arm.  It now is causing my wrist to lock. I wrote D.r freeland 09/20/16 (7 times).  She never writes back.  I haven't been on the call out for PT.  So I'm left with pain in my arm.  What is going to happen to my arm.  I feel like I'm being neglected proper medical treatment.  I tried to speak to Dr. Freeland and she was very rude and kept walking.  Why because I am an inmate.  I am in so much pain | Grievance Denied | 10/20/16 | NULL | NULL | NULL | NULL |
| OT5426 | 652649 | 11/17/16 | Prob w/ Staff-Officers | MUN | On Nov 2016, I was denied a shower by CO Hall. She striped searched me out. CO Llyod had took inmate J. Williams rec, so I told Mrs. Hall forget it because we was going out together. she got mad and slammed my wicky. I never cursed, nor disrespected her. She took my shower because she states "I wasted her fucking time". I asked to speak to a Sgt. CO Llyod took Williams shower also. But she gave it back to her. Sgt. Lyes said he agree with his CO. she should not be able to take my shower. I didn't do nothing but change my mind at the last minute about participating with rec. Nov 11-16 8:20 am | Grievance Denied - F | 11/28/16 | NULL | NULL | NULL | NULL |
| OT5426 | 656786 | 12/19/16 | Health Care | MUN | On Oct 2015 I had an accident in the CK regarding the dishwasher. I am unable to extend my arm. Muncy says it's a frozen tenedit. So I went to see an ouside Dr. and they recommended that I continue PT. Mrs. Chris that is my therapist has discontinued the PT because she feels as tho theres nothing she can do. So on August 23, 16 Glenmoyer said I should continue PT. It is now Dec 16, 2016 and I'm still not in PT. My arm is locked and it's very painful. When will I get the right medical attention. Dr. Freeland said something is absoulty wrong with my arm, but Muncy is not willing to pay for me to be re-evaluated by a second doctor. I never seen a doctor in Giensenger I seen his assistant. They felt as though it wasn't that serious to do surgery. Meanwhile I am unable to extend my arm and it's very painful. | Grievance Denied | 12/21/16 | NULL | NULL | NULL | NULL |

DEF.DOC000215

| Inmate # | Grievance # | Grievance Dt | Grievance Category | FAC | Grievance Comment | Initial Grievance Disposition | Initial Compl. Dt | Appeal Grievance Disposition | Appeal Compl. Dt | Final Grievance Disposition | Final Compl. Dt |
|---|---|---|---|---|---|---|---|---|---|---|---|
| OT5426 | 663601 | 02/07/17 | Health Care | MUN | On Oct 6, 2015 I was working in the CK on the dishwasher. The metal slide door was broke. So in order for us to lift the middle door we would have to notify a blue shirt (staff) so they can give us the screwdriver so we can unjam the door. While cleaning the machine the second door (metal) came slamming down on my forearm. Due to me constantly complaining I was allowed to go to Medical. Mrs. Young gave me ice/and the day off. I continued to be in pain and unable to bend my arm so I put a sick call in. Oct 18th I went back to Medical and they said it's just swollen in my tissue. I requested that they give me a x-ray because 2 weeks later the swellen should have went down. So Nov 2nd, they issue me an xray. I went to sick call again due to the lost of mobility regarding my arm. January 14, 2016 Nurse Paez informed me that they had a left arm xray on file instead of a right arm xray. I never even got my left arm scanned. So Nurse Paez issued a MRI but Dr. Freeland denied it. So in January of 2016 I took another xray. The results stated swelled in the tissue, no dislocation, no fracture or joint effusion. If they would have took the xray on Oct 6, 2015 when the incidnet occurred maybe my tendit would not be frozen. When you hurt yourself in SCI Muncy while working your suppose to go get a xray. I have put in over 15 sick calls regarding my arm. I was in Physical therapy but Chris the therapist removed me because she states "that there is nothing she can do regarding my arm. That I need surgery or serial casting". I went to see a doctor 9/23/16! They stated that the arm looks normal just continue PT. Well how can I when the therapist said she will not take me back. It took 9 months after the incident for Dr. Freeland to come and speak to me. My arm is hurting so bad. Why ain't I going to a hospital to get serial casting. Dr. Freeland stated SCI-Muncy does not want to pay for me to go out and consult another Dr. for a second opinion. The nerve in my arm is frozen theres n | NULL | NULL | NULL | NULL | NULL | NULL |
| OT5426 | 667030 | 03/02/17 | Health Care | MUN | Today is 03/01/17, I spoken with Mr. Frantz regarding my right forearm. I am losing sensation in my fingers and there is a knot in my right forearm. I spoken to Dr. Freeland and CHCA were suppose to have a meetingw ith me so we can come up with a resolution. The therapist Chris discontinued physical therapy because she stated that there is not no improvement. I went to Geisinger Hosptial, the doctors assistant said it is to risky and they don't feel that there is nothing they can do. I spoken to Chris and she said that she recommend I get senal casting. I don't understand I am in excruciating pain. They do not have me on no pain medication, physical therapy, nothing... | Grievance Denied | 03/10/17 | Uphold Initial Response | 03/30/17 | NULL | NULL |

DEF.DOC000216

| Inmate # | Grievance # | Grievance Dt | Grievance Category | FAC | Grievance Comment | Initial Grievance Disposition | Initial Compl. Dt | Appeal Grievance Disposition | Appeal Compl. Dt | Final Grievance Disposition | Final Compl. Dt |
|---|---|---|---|---|---|---|---|---|---|---|---|
| OT5426 | 667208 | 03/06/17 | Health Care | MUN | I am filing this grievance because the "Doc" has refused to provide the necessary medical treatment for the injury of my arm and the delay in providing necessary medical treatment for my injury. My ongoing pain is a constant issue and will most likely remain for the rest of my life. On Oct 6, 2015 I was injured due to the neglect of this prison. I wrote to Mrs. Young requesting an x-ray because she failed to issue one when the incident occurred. She stated it was just swellen in my tissue. They mixed my x-ray up for 3 months. They had a left arm x-ray on my file. I never got scanned for a left arm x-ray. So for 3 months I was told that nothing was wrong. Mrs. Paez is the one who notified me that they had a wrong x-ray on my file. James Zimmerman is the one who scanned my arm. He stated he doesn't understand why my arm is locked into this posiiton. This is a mal-pratice on SCI Muncy's behalf because if the medical team would have tooken the proper medical procedures regarding my arm maybe I wouldn't be in so much pain and SCI-Muncy's medical team would have came up with a soultion. I am not prescribed no pain medication for my injury. I am left to struggle through the pain. I attended physical theraphy to no avail, went to Geisinger to no avail. I am hurt mentally and physically due to this negligence. So I am seeking to be compensated for monetary damages as well as proper medical care. My right arm is deteroating, also I am losing sensation in my right fingers. I was suppose to have a meeting with CCHA, Dr. Freeland, Chris- therapist and Mr. Frantz to determine a solution regarding my arm. Chris-therapist - recommended serial casting? Why am I not being treated properly within the medical department. Why am I not being prescribed pain medication for my injury? Why did Dr. Freeland take 9 months to see me. I am begging for help, I am in so much pain. Denise Dixon OT5426 | Grievance Denied | 03/24/17 | NULL | NULL | NULL | NULL |
| OT5426 | 670744 | 03/29/17 | Prob w/ Staff-Officers | MUN | On March 22, 2017 I was charged with charges #35 refusing to obey an order, #40 Presence in an unauthorized area. I do not wish to say why I was in an unauthorized area. But I refused to be in the program on JB. So I was not suppose to be sacnutioned two times. I was suppose to jump straight to infraction 5 - Unit Manager resulting in 7 day of cell restricion. Mrs. Stark informed Mr. Donrumma that she and Mr. McElroy sancuted me for my second infraction. Which would have been 2 days loss of activities. I served my sanucted on 3/22/17 - 3/23/17 now I am forced to do 7 days of CR's. They pentalized me two times for one situation. I shouldn't have to do the CR's because they made me do the sanction. I have the copy This way my second offense. Mrs. Stark wrote me up and told Mr. Donarumma to keep me in. | Grievance Denied | 04/10/17 | NULL | NULL | NULL | NULL |

DEF.DOC000217

| Inmate # | Grievance # | Grievance Dt | Grievance Category | FAC | Grievance Comment | Initial Grievance Disposition | Initial Compl. Dt | Appeal Grievance Disposition | Appeal Compl. Dt | Final Grievance Disposition | Final Compl. Dt |
|---|---|---|---|---|---|---|---|---|---|---|---|
| OT5426 | 683334 | 06/22/17 | Health Care | MUN | On Wednesday 16, 2017 I went to Geisinger Hospital to see an elbow specialist name Dr. Harty. Upon speaking to Dr. Harty he revealed to me that I have arthritis in my right elbow under the scar tissue of a 70 yr old man. I am in constant pain and discomfort. The Dr gave me a shot in my elbow to easy the pain at Geisinger Hospital. I am scheduled to go see an arthritis specialist to determine if the arthritis is hereditry or was it caused by my arm being locked in this position for a yr and a half. I was prescribed 600 mg of Ibprofuen before I was told I had arthritis in my right forearm. Even though that was not subsiding the pain I am constantly reduced to deal with. I went to sick call on 6/17/17 requesting pain management and ice. I go to Geisinger Hospital once a week and it leaves me in so much pain and my arm is inflammed. Graig the therapist wrote that I should receive ice and something for pain even Dr. Harty did. The RN said I can get it off of commissary. I do take them. But Im consuming so many trying to keep the pain at bay that it's beginning to make me sick and on the Ibuprofen information it says "you shouldn't take more that 10 days!  So what am I a geonie pig"When Graig the therapist from Geisinger Hospital writes his notes he wrote "plan-anticipated treatment needs: Hot/cold, manual theraphy, pain management, therapeutic exercises. Graig said he writes in his notes that I should receive something for the pain and ice. I don't receive nothing. I asked to speak to Dr. Freeland after finding out I have arthritis of a 70 yr old man. Dr. Harty told me that I will be seeing a arthritis specialist to figure out the degree of the arthritis. Then he will do the operation. The nurse told me I am a liar. Why doesn't Dr. Freeland see me. All she does is sign off on things. I been having this same thing with medical for so long. Even when I ws going PT within the jail. Chris would request I get ice for the swelling. Like my arm keeps swelling up  and the RN's | Uphold in part/Deny in | 06/23/17 | Uphold Initial Response | 07/13/17 | UIR/Health C | 09/27/17 |
| OT5426 | 685472 | 07/06/17 | Prob w/ Staff-Officers | MUN | I think it is absurd that CO Vanhorn has us getting into the shower then going outside for our hr rec.  When it is cold in the morning it is uncomfortable to be out there in the cold on that pavement.  We use to go out for rec come in for shower.  That's how we do it for second shift also.  CO Vanhorn is adjusting the rules so they can satisfy her.  Your proes are allt he way open we shouldn't be subjected to this.  Either we have to pick shower or the one hr rec, that's due to us.  When Ms. Lee had this block we never got in the shower first.  Ms. Vanhorn is on a pwer trip because all these trainees is down here.  We wake up at 6:45 to eat, then showers than yard.  No how is that ok.  We would rather take our shwoer after our hr. rec. | NULL | NULL | NULL | NULL | NULL | NULL |
| OT5426 | 691345 | 08/14/17 | Conditions | MUN | To Whom it may concern: I am filing this grievance because I have been forced to be housed on the top bunk for 30 days. I have a bottom bunk order, I can not extend my arm. It so dangarous for me trying to get on and off of the bunk. I informed CO Figertti when I got out of the RHU that I am not top bunk material. I have bruses all on my left side because I have to put my weight on it so I don't hurt my right arm. This is a safety hazard having me being housed on the top bunk. I been housed up here since 7/10/17. | Uphold Inmate | 09/01/17 | Uphold Inmate | 09/15/17 | NULL | NULL |

DEF.DOC000218